USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/22/16



**The New York Times Company**

David McCraw
Vice President and
Assistant General Counsel

620 8th Avenue
New York, NY 10018

tel 212.556-4031
fax 212.556-4634
mccraw@nytimes.com

January 22, 2016

**BY HAND DELIVERY**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square, Room 240
New York, NY 10007

Re:   *United States v. Sheldon Silver* – 15-cr-93 (VEC) – Request to Unseal Transcript and Related Filings

Dear Judge Caproni:

I write on behalf of The New York Times Company ("The Times") to seek the unsealing of the transcript of oral argument held before this Court on October 16, 2015, as well as related sealed filings, in the above-referenced action. Pursuant to this Court's Order of December 1, 2015 (Docket No. 138), the parties to this action have been directed to file a letter brief regarding whether these documents should remain under seal. The Times writes separately to assert the public's intense interest in these documents and the right of access to them under both the First Amendment and the federal common law. If Your Honor prefers, The Times is prepared to move by formal motion to intervene and seek the unsealing.

### A. FACTUAL BACKGROUND

Prior to trial, both Defendant Sheldon Silver and the Government filed an array of motions in limine seeking to exclude or admit various categories of evidence. While many of the motions were filed on the public record, it appears that at least one such motion (the "Sealed Motion"),

59747

along with responses to it, was filed under seal. *See* Docket No. 78. Oral argument concerning the Sealed Motion was closed to the public. The Court ruled on October 21, 2015 that the transcript of that proceeding, as well as the related sealed documents, were properly sealed for reasons that could not be fully stated on the public record, and that redaction could not be accomplished without compromising the privacy interests of third parties and Mr. Silver's and the Government's fair trial rights. *See* Docket No. 91. While the Court denied the Sealed Motion, it is not clear whether the evidence at issue in the motion was admitted at trial or excluded. *Id.* It is not clear whether any matters other than the Sealed Motion were discussed at the closed oral argument.

The Court specifically noted, "After completion of the trial, the Court will reconsider whether the filings and the oral argument record can be redacted and unsealed or should remain under seal pursuant to the *Waller v. Georgia* [467 U.S. 39, 48 (1984)] factors." On December 1, 2015, the Court directed the parties to confer and file briefs stating the reasons, if any, for continued sealing of the transcript and related documents.

## B. ARGUMENT

### 1. The First Amendment Right of Access

Public access to the documents that guide judicial decision-making is an indispensable feature of American democracy. "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government. To ensure that ours is indeed a government of the people, by the people, and for the people, it is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives and their representative institutions." *United States v. Erie Cnty.*, 763 F.3d 235, 238-9 (2d Cir. 2014).

It is now well settled that a qualified First Amendment right of public access applies to any proceeding that meets the so-called "experience and logic" test, which asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006).

There is no doubt that pre-trial hearings involving motions in limine concerning the evidence to be allowed at trial, like the one at issue here, fall within the First Amendment right. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986) (First Amendment right applies to pretrial hearings); *United States v. Martoma*, No. S1 12-cr-973 (PGG), 2013 U.S. Dist. LEXIS 182959, *10 (S.D.N.Y. Jan. 9, 2014) ("[A] qualified First Amendment right of access extends 'to a pretrial hearing on a . . . motion to preclude the use of certain evidence at trial,' as well as to '[w]ritten documents filed in connection with pretrial motions.'" (denying request to seal motions in limine) (quoting *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987)). *See also Waller*, 467 U.S. at 47 ("The need for an open proceeding may be particularly strong with respect to suppression hearings").

2

The First Amendment right attaches both to the proceedings and to the documents that are part of the proceedings. *See Erie Cnty.*, 763 F.3d at 239 ("[O]ur Constitution, and specifically the First Amendment to the Constitution, also protects the public's right to have access to judicial documents."); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). That right includes the transcripts of proceedings as well. *See Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 n.8 (2d Cir. 2013) ("Although the issue of access to the physical courtroom is moot, the question is nevertheless squarely presented to us because intervenors seek release of the transcripts of those proceedings, and the question [of] whether the First Amendment right applies to the transcripts is identical to whether the right applies to the physical proceedings.").

"Once a First Amendment right of access to judicial documents is found, the documents 'may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' And, '[b]road and general findings by the trial court ... are not sufficient to justify closure.'" *Id.* at 239 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted)) (emphasis added). The party seeking closure must not only identify a compelling interest that will be harmed by access but also show that granting access would create a "substantial probability of prejudice" to that interest. *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995).

Courts are clear that the public's interest in access is at its maximum in cases, such as this one, that involve allegations of corruption involving a public official. As one court observed, "A dominant chord running through [case law]...is that courts must make public corruption proceedings open to public scrutiny. Official corruption is a malignant cancer on the body politic, for which prosecution and publicity are strong cures. Prosecution of public corruption cases must be highly transparent so that the public will be aware of the governmental transactions at issue, which will allow members of the public to express opinions and exercise the right to petition and vote based on conclusions reached from the facts in the public record, regardless of the guilt or innocence of a particular defendant." *United States v. Kemp*, 365 F.Supp.2d 618, 634 (E.D. Pa 2005) (considering request to unseal wiretap materials). More than that, prosecution of elected officials often has the effect of nullifying the will of voters as expressed at the polls by forcing from office the candidates the people have selected. That step should not be taken under a cloak of secrecy.

The full basis for the Court's sealing decision itself remains under seal. However, while the two primary interests identified by the Court – protection of fair trial rights and the privacy of third parties – may in certain circumstances merit sealing, none of the factors that could justify such sealing are present here.

Most significantly, any fair trial concerns that animated this Court's provisional sealing order are gone. The trial is over, and Mr. Silver has been convicted. Large amounts of evidence have been publically aired and Mr. Silver given an adequate opportunity to contest and dispute that evidence and introduce evidence of his own. It is hard to see what prejudice Mr. Silver or the Government might suffer should the requested documents be unsealed. Were Mr. Silver to win a retrial, whatever prejudice to the new proceeding might result from this unsealing is

3

overshadowed by the extensive coverage of the trial and the conviction, and can be adequately addressed through the voir dire process. *See also ABC, Inc. v. Stewart*, 360 F.3d 90, 102 (2d Cir. 2004) ("We take very seriously the fair trial rights of defendants, and ... district courts are empowered in certain circumstances to safeguard those rights. But, in general, openness acts to protect, rather than to threaten, the right to a fair trial.") (vacating order barring press from voir dire proceedings).

To the extent that Mr. Silver asserts that unsealing would lead to the disclosure of personally embarrassing information that would impact his right to a fair trial, such an interest fails to rise to the level necessary to justify complete sealing. " 'The mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access,' of course." *Martoma*, 2013 U.S. Dist. LEXIS 182959 at *18 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). Moreover, "The mere fact that the suit has been the subject of intense media coverage is not, however, sufficient to justify closure. To hold otherwise would render the First Amendment right of access meaningless; the very demand for openness would paradoxically defeat its availability." *ABC, Inc.*, 360 F.3d at 102.

Concededly, courts have found that the privacy interests of innocent third parties can justify sealing in certain circumstances. *See In re New York Times Co.*, 828 F.3d at 115-16. As the documents remain under seal, we do not know the nature or extent of any third party's privacy interest. However, any such interest must be weighed against the public's interest in disclosure, which is at its height in public corruption cases such as this one. *Id.*; *see also United States v. Huntley*, 943 F. Supp. 2d 383, 388 (E.D.N.Y. 2013) (unsealing sentencing memorandum containing names of third parties surreptitiously recorded by defendant).

Further, even if there were a "higher value" sufficient to meet the *Press-Enterprise* standards, the courts must narrowly tailor sealing. *See Waller*, 467 U.S. at 48. Continued wholesale sealing of the oral argument transcript and sealed documents would violate that constitutional imperative. The oral argument no doubt encompassed not only the contents of the Sealed Motion (and possibly other motions as well), but also the threshold argument about the propriety of entering the sealing order in the first place. In such circumstances, limited redaction is the appropriate remedy.

2. The Common Law Right of Access

Public access to the documents at issue here is also protected by the common law right of access, which "predate[s] the constitution," and creates a "presumption favoring access" to judicial documents. *United States v. Amodeo*, 44 F.3d 141, 145, 146 (2d Cir. 1995) ("*Amodeo I*"). As set forth in *Erie County*, the common-right law is a qualified right based on a three-step analysis in which the court determines (1) whether a document is a "judicial document"; (2) if it is, how strong the presumption of access is; and (3) whether countervailing concerns overcome the presumption and justify continued sealing. *Erie Cnty.*, 763 F.3d at 239. As explained above, there is no doubt that the transcript of the oral argument and the papers concerning the sealed motion in limine are judicial documents. *See Lugosch*, 435 F.3d at 119 ("In order to be

4

designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).

**The presumption of public access is strong.** Once a document is determined to be a judicial document, the court must then assess the weight of the presumption of access that attaches. *Erie Cnty.*, 763 F.3d at 241. "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II* at 1049. The presumption is at its weakest when the documents are discovery materials put before the court for no purpose other than to illustrate how discovery had proceeded. *Id.* at 1050. At the other end of the spectrum, when the documents are part of a dispositive motion, the presumption is at its zenith. *Lugosch*, 435 F.3d at 123. The Court's decision on the motion in limine, recorded in the sealed transcript, is a pure product of this Court's inherent Article III judicial power and, as such, is entitled to a strong presumption of access. This was a decision affecting what could be presented at trial, speaking directly to the fairness of the overall proceedings.

**No countervailing interest overcomes the presumption of access.** As a final analytical step, a court must "balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. Whatever interest might have existed at the time of trial, it is plain that with the conclusion of the trial no fair trial rights reasonably remain to be prejudiced. To the extent that a privacy interest is present, that possibility is more than outweighed by the public's powerful interest in understanding the full nature of a corruption trial of a prominent public official. Moreover, any truly compelling privacy interests involving third parties can be dealt with through limited redaction, rather than through wholesale sealing.

## C. CONCLUSION

Mr. Silver was the Speaker of the New York State Assembly and one of the most prominent and important political figures in the state. It is hard to imagine an event more central to the public interest than the trial on corruption charges of such an influential public official, particularly when the charges led to his resignation from office. The Court's entire rationale for its decision on the Sealed Motion is contained within the transcript, and the factual basis for that decision remains hidden from public scrutiny. Public access here is essential for public understanding not only of the events of the trial itself, but of the basis of the Court's decision-making. As the Supreme Court observed in *Richmond Newspapers*, "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980).

The Times thanks the Court for its consideration.

Sincerely,

David E. McCraw

cc: All Counsel of Record
 (by Email)