UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA      :    **REQUEST TO FILE UNDER SEAL**

   -v.-                                :    S1 15 Cr. 093 (VEC)

SHELDON SILVER,                  :

        Defendant.            :

------------------------------------X


## GOVERNMENT'S MOTION *IN LIMINE*
## CONCERNING CERTAIN CHARACTER EVIDENCE


PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Carrie H. Cohen
Howard S. Master
Andrew D. Goldstein
James M. McDonald
Assistant United States Attorneys
   -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA          :

   -v.-                           :     S1 15 Cr. 093 (VEC)

SHELDON SILVER,                   :

         Defendant.             :

----------------------------------------X

## GOVERNMENT'S MOTION *IN LIMINE* CONCERNING CERTAIN CHARACTER EVIDENCE

The Government respectfully submits this memorandum of law in support of its application for *in limine* rulings from the Court with respect to certain evidence the Government seeks to introduce only if the defendant introduces evidence of his good character through cross-examination of Government witnesses, on his direct case, or if the defendant himself testifies.[1] Due to the potential impact of the matters discussed herein on certain non-parties and the defendant's request that this motion be filed under seal, the Government, as an initial matter, respectfully submits this motion under seal in order to afford the Court an opportunity to balance the presumptive public right of access to judicial documents against privacy considerations. *See, e.g., United States* v. *Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995); *In re Application of Newsday Inc.*, 895 F.2d 74, 75 (2d Cir. 1990).

---

[1] While motions *in limine* were due September 18, 2015, the Government noted at that time that it still was investigating two particular subject matters (one of which is the subject matter raised herein) and that the defendant had agreed not to claim that a motion based on those subject matters was untimely if filed by October 12, 2015. (*See* Gov. Mot. *in Limine* at 1 n.1). The defendant subsequently requested that, in light of the Court closure for the October 12 holiday, the Government submit this motion no earlier than October 13, 2015, to ensure that the Court is able to consider the request that the motion be filed under seal.

As set forth in more detail below, the Government has credible and corroborated evidence that while serving as Speaker of the Assembly, the defendant engaged in extramarital relationships with two women, one of whom ███████████████████████████████████ ███████████████████████████████ lobbied the defendant on a regular basis on behalf of clients who had business before the State ██████████████████████ and the other, ██████████████████, for whom the defendant used his official position to recommend for a job with a State ██████ over which he exercised a particularly high level of control ██████████████████████████. In light of this evidence, which is relevant not only to the defendant's moral character, but to the use of his official position for private benefit, the Government seeks an *in limine* ruling from the Court that would permit the Government to use such evidence to cross examine the defendant or other witnesses from whom the defendant elicits character testimony if such testimony relates to the defendant's ethics or integrity, separation of his personal business from his official position, and/or character for truthfulness and honesty.

## BACKGROUND

The Defendant and ██████████████████████



The ██████████████████ specifically lobbies the defendant and often is hired, in part, to lobby the defendant directly on behalf of her clients who have business before the State.

After the defendant was charged in this case via Complaint, the Government obtained ███████ numerous recordings of the defendant's ███████████████████ ████████████████████████████████████████████████████ ████████ (collectively, the "Recordings"). █████████████████████████ ████████████████████████████████████████████████████ ████████

During the Government's review of the Recordings, the Government reviewed a recording dated ██████████ of a conversation between the defendant and a woman, during which both State and private business was discussed (the ███ Conversation). The Government credibly identified the woman to whom the defendant was speaking in the ███ Conversation as █████████████████.

The recording of the ███ Conversation appears to have been inadvertent. It follows a ████████████████████████████████, with the recording device used to record ██████ ████████ remaining on without the apparent knowledge of the defendant or █████████ ████████████, who speak quietly and in whispers throughout the conversation. Based on the ███ Conversation and subsequent investigation, the Government has a good faith belief that, at the time of the ███ Conversation, the defendant and █████████████████████ were and/or had been engaged in an extramarital relationship.[2]

---

[2] The Government initially produced the recording that contained the ███ Conversation to the defendant on or about February 27, 2015, among numerous other Recordings ████████ ██████████████████████. On August 27, 2015, the Government provided the defendant with a digitally enhanced audio of the ███ Conversation and later, as part of a separate

3

During the ▓▓ Conversation, the defendant and ▓▓▓▓▓▓▓▓▓▓▓▓ discuss their desire to conceal the truth about their relationship from reporters inquiring about extramarital relationships, and how they should handle such inquiry. Specifically, ▓▓▓▓▓▓▓▓▓▓▓▓ told the defendant that she urgently had been trying to see him because a reporter had called legislators inquiring about whether certain State legislators were having "affairs." The defendant responded, "I don't think he caught us," but also noted that the press had requested the defendant's travel and campaign finance records and expressed concern that those documents as well as telephone records could reveal their relationship. The defendant further discussed with ▓▓▓▓▓▓▓▓▓▓▓▓ that it was "not safe" for them to be seen together, and that he did not see the press inquiries "dissipating for a long time."

During the ▓▓ Conversation, ▓▓▓▓▓▓▓▓▓▓▓▓ and the defendant further discussed a matter pending before the Assembly about which ▓▓▓▓▓▓▓▓▓▓▓▓ was lobbying the Speaker's office on behalf of a client. Specifically, ▓▓▓▓▓▓▓▓▓▓▓▓ complained to the defendant that a high-level member of his Assembly staff was not treating her well, and that, as a result, ▓▓▓▓▓▓▓▓▓▓▓▓ went directly to the defendant to lobby on behalf of her client, telling the defendant: "I don't talk to anybody about the issue except

---

production of recently obtained documents, produced other documents related to this motion. To the extent the defendant disputes the Government's good faith basis regarding the nature of his relationship with ▓▓▓▓▓▓▓▓▓▓▓▓, the Government is prepared to provide the Court with a proffer of its evidence, including a copy of the Recording and a transcript thereof to review *in camera*.

4

you." The defendant then discussed how the particular issue on which ▮▮▮▮ ▮▮▮▮ was lobbying the defendant was a "difficult issue in the [Assembly] conference."

The Government has reviewed documents that it obtained related to ▮▮▮▮ ▮▮▮▮ lobbying efforts on behalf of various clients and learned that ▮▮▮▮ ▮▮▮▮ regularly lobbied the defendant directly on behalf of clients who had business before the State, including during the time period of the ▮▮▮ Conversation. In addition, numerous witnesses identified ▮▮▮▮ as an individual who as a lobbyist had special access to the defendant, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ to see the defendant, and who obtained certain clients in part because of her access to the defendant.

The Defendant and ▮▮▮▮

The Government also obtained evidence supporting a good faith belief that the defendant has had a long-running extramarital relationship with ▮▮▮▮▮▮▮▮▮▮.[3] ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The defendant's relationship with ▮▮▮▮▮▮ appears to have begun at least as early as ▮▮▮▮. Based on telephone records obtained by the Government for telephone numbers known to have been used by the defendant and related evidence, the Government learned that the defendant possessed and used two cellular telephones,

---

[3] To the extent the defendant disputes the Government's good faith basis, the Government is prepared to provide the Court with a proffer of its evidence concerning the relationship between the defendant and ▮▮▮▮▮▮▮▮▮▮.

one that appears to have been used predominantly for State business, and one that the defendant used principally for calls with ▇▇▇ (the "Personal Cellphone"). Based on telephone records and other evidence, the Government learned that the Personal Cellphone was not registered in the defendant's name, ▇▇▇ and bills for the Personal Cellphone were sent not to the defendant, ▇▇▇ The Personal Cellphone was activated in ▇▇▇ only days after ▇▇▇ activated her own cellphone with which she and the defendant communicated.

The Government has obtained evidence that during the course of their relationship, the defendant used his official position to help ▇▇▇ obtain State employment. Specifically, in ▇▇▇, the defendant recommended ▇▇▇ for a ▇▇▇ position with ▇▇▇. The State Legislature selects ▇▇▇ When the defendant served as Speaker, he approved ▇▇▇, given the size and composition of the Assembly versus the Senate, the defendant's selected candidates were elected to serve ▇▇▇.

6

The Government has confirmed through witnesses and documents that the defendant, through his Chief of Staff, recommended ▓▓▓ to ▓▓▓ both by calling ▓▓▓ whom the defendant had appointed to the ▓▓▓ and by calling the State officer ▓▓▓ who was in charge of hiring and who reported to that same ▓▓▓, without revealing the personal relationship that the defendant had with ▓▓▓ ▓▓▓ The Government also learned that ▓▓▓ was the only person that the defendant (or his Assembly staff) had ever recommended to ▓▓▓ for hire and that the Speaker's office called after making the initial recommendation of ▓▓▓ ▓▓▓ to check in on the status of her application. The Government further learned that ▓▓▓ hired ▓▓▓ in part due to the defendant's recommendation and follow-up requests. ▓▓▓

## ARGUMENT

### The Government Should Be Allowed To Cross-Examine Character Witnesses and/or Silver with Relevant Instances of Silver's Conduct

*1. Applicable Law*

Where evidence of character is admitted by way of testimony as to reputation or opinion, Rule 405(a) of the Federal Rules of Evidence permits cross-examination "into relevant specific instances of conduct." Fed. R. Evid. 405(a). Indeed, "[o]nce a defendant offers character testimony, the prosecution is afforded substantial latitude to rebut such evidence." *United States*

v. *Russo*, 110 F.3d 948, 952 (2d Cir. 1997); *see also United States* v. *Moore*, 27 F.3d 969, 974 (4th Cir. 1994) (in fraud prosecution, defendant's introduction of character testimony concerning his "trustworthiness and dependability in business matters" "opened the door" to government questions about the defendant's having once filed for bankruptcy); *United States* v. *Dimora*, 843 F. Supp. 2d 799, 854 (N.D. Ohio 2012) (holding that although "evidence relating to [the defendant's] alleged visits to his mistress on county time does not constitute 'other acts' evidence under Rule 404(b)," such evidence was admissible because it "is inextricably intertwined with evidence that he spent large parts of the county work day away from the Auditor's Office on personal matters"), *aff'd*, 750 F.3d 619 (6th Cir. 2014); *see generally Michelson* v. *United States*, 335 U.S. 469, 479 (1948) (recognizing that "to prevent [the defendant] from profiting by a mere parade of partisans," "[t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where otherwise the law shields him").

In cross-examining a character witness, the Government need not offer extrinsic evidence so long as it can point to a good-faith basis for its questions. *See United States* v. *Payton*, 159 F.3d 49, 58-59 (2d Cir. 1998); *United States* v. *Shyne*, No. S4 05 Cr. 1067 (S.D.N.Y. Apr. 12, 2007 - May 10, 2007) (KMK) (allowing the cross-examination of a character witness regarding the defendant' extramarital relationship, for which the Government had a good faith basis based on an interview with a witness, after the character witness testified that the defendant carried himself in an honorable manner), *aff'd*, 388 Fed. App'x 65, 71-72 (2d Cir. 2010). Moreover, "[w]hen a defendant offers an exculpatory explanation for the government's

8

evidence, he 'opens the door' to impeachment of his credibility, even by previously inadmissible evidence." *United States* v. *Desposito*, 704 F.3d 221, 233-34 (2d Cir. 2013). Accordingly, "[w]here a defendant testifies on direct about a specific fact, the prosecution is entitled to prove on cross-examination that he lied as to that fact," and may do so using "evidence that it was barred from using on its direct case." *United States* v. *Beverly*, 5 F.3d 633, 639-40 (2d Cir. 1993); *see also United States* v. *Ramirez*, 609 F.3d 495, 499 (2d Cir. 2010) ("when a witness puts certain facts at issue in his testimony, the government may seek to rebut those facts, including by resorting to extrinsic evidence if necessary").

In *United States* v. *Shyne*, the Government was permitted to ask questions about the defendant's extramarital relationship in response to character testimony elicited by the defendant. 388 Fed. App'x at 71-72. Specifically, the defendant called as a defense witness his pastor, who testified that the defendant "carried himself in a very honorable manner." *Id.* at 71. On cross examination, the Government asked the pastor whether his opinion of the defendant would change if he learned that the defendant had had an extramarital relationshiop. *Id.* The Second Circuit found no error in such cross examination because the Government had a good faith basis for the questions, and the defendant "opened the door to such questioning when his pastor testified that [the defendant] 'carried himself in a very honorable manner.'" *Id.* at 71-72. *See also Forgione* v. *Keane*, No. CV-90-12231 (CPS), 1990 WL 127688, at *3 (E.D.N.Y. August 15, 1990) (on habeas review, explaining that prosecution's questioning of defendant on cross examination about an extramarital relationship was proper, because it was "relevant . . . to question petitioner's character, which he put in issue"); *United States* v. *Garnes*, 587 Fed. App'x

60, 61-62 (4th Cir. 2014) (per curiam) (permitting cross examination of defendant regarding her extramarital relationship with her former supervisor); *United States* v. *Duval*, 902 F.2d 35, at *5 (6th Cir. Apr. 26, 1990) (per curiam) (affirming introduction of evidence of extramarital relationship as relevant to what the defendant did with unexplained money); *Longmire* v. *Alabama State Univ.*, 151 F.R.D. 414, 419 (M.D.Ala. 1992) ("If [the president of the defendant university] intends to offer evidence of his general good character, then counsel for [plaintiff] is free to ask questions about any extra-marital affair that [the president] may have had while he was either at Jackson State or Alabama State.").

2. *Discussion*

The Government does not seek to introduce in its case-in-chief evidence of the defendant's personal relationships with ▇▇▇▇▇▇▇▇▇▇▇▇ or ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇. However, should the defendant testify or elicit character testimony on his behalf, carefully tailored questions and extrinsic evidence concerning such relationships should be admissible to impeach such testimony. Indeed, while evidence of extramarital relationships can be permissible impeachment evidence standing alone, *see, e.g., Shyne*, 388 Fed. App'x at 71-72, in light of the defendant's misuse of his official position as set forth above, and his active concealment of his personal relationships while employing his Assembly staff and others to provide official benefits and access to ▇▇▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇, such evidence is particularly relevant to rebut efforts by the defendant to introduce evidence of his purported good moral character.

Specifically, should the defendant introduce, either through cross-examination or through his own witnesses, reputation or opinion testimony concerning his good moral character, the Government should be permitted, pursuant to Rule 405(a) of the Federal Rules of Evidence, to cross-examine those witnesses about ████████████████ and ████████ ████████████, including whether those witnesses knew that Silver was in a romantic relationship with them and used his official position to benefit them. Those relationships and the official benefits Silver provided are particularly relevant to impeach the following potential topics of character testimony: (a) the defendant's integrity and ethics, and in particular, his commitment to not use his official position to obtain private benefits, or put another way, the separation of his personal business from his official business and business before the State; and (b) his honesty and truthfulness.[4]

Silver's relationship with ████████████████ ████████████████████ ████████ when she lobbied him on behalf of clients who had business before the State is highly probative of the defendant's integrity, ethics, honesty, and truthfulness. In particular, such

---

[4] In addition, if the defendant introduces evidence that he is or has a good reputation as a family man, or about the longevity of his marriage or his commitment to his marriage, the Government should be permitted to introduce evidence regarding the extramarital relationships described above.

Further, to the extent the defendant is permitted to introduce evidence related to the defendant's purported good acts on behalf of his constituents and the People of the State of New York, the Government will seek to admit the evidence detailed herein to provide a more complete picture of the defendant's character as a legislator, including his willingness to use his official position to advance his personal interests. *See* Fed. R. Evid. 403 and 405(a).

conduct demonstrates Silver's willingness to use his official powers to further his personal interests while concealing his personal involvement from his staff and the public (which is not unlike his willingness to provide special access to Developer-1 while secretly receiving payments from Developer-1). Similarly, Silver's efforts to help ▓▓▓▓▓▓▓▓▓▓▓▓ obtain a job at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ – without disclosing to ▓▓▓▓ that he was engaged in a personal relationship with her – reflects deliberate deception by Silver while seeking a benefit for ▓▓▓▓▓▓▓▓▓▓, and thus for himself, through use of his official position (which is not unlike the defendant's recommendation of Doctor-1's family members for jobs while receiving mesothelioma referrals from Doctor-1).

Thus, while the defendant's extramarital relationships, by themselves, would be proper subjects of cross examination should the defendant elicit testimony regarding his "honorable" character, *see Shyne*, 388 Fed. App'x at 71-72, the fact that those relationships involved the misuse of his official position is particularly probative of other aspects of the defendant's character that are squarely relevant to the charged offenses, including his willingness to use his official position to advance his personal interests. As such, the allowance of such cross-examination and extrinsic evidence in response to character testimony elicited by the defendant would serve the purposes of Rules 405(a) and 403 of the Federal Rules of Evidence by providing the fact-finder with a more complete picture of the defendant's character, and any testimony about Silver's character without the acknowledgment of such facts potentially would be incomplete and misleading.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's relationships with ████████████ and ████████████, and the official benefits he provided to them, are proper subjects of cross examination should the defendant put his character at issue at trial.

Dated:   New York, New York
         October 12, 2015

>                    Respectfully submitted,
>
>                    PREET BHARARA
>                    United States Attorney
>
>
> By:        /s/
>            Carrie H. Cohen/ Howard S. Master/Andrew D.
>            Goldstein/James M. McDonald
>            Assistant United States Attorneys
>            Telephone: (212) 637-2264/2248/1559/2405