UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHELDON SILVER,<br><br>                Defendant. | No. 15 Cr. 93 (VEC)<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**FILED UNDER SEAL** |

# DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* CONCERNING CERTAIN CHARACTER EVIDENCE

Joel Cohen
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5644
Facsimile: (212) 806-6006

Steven F. Molo
Robert K. Kry
Justin V. Shur
MOLO LAMKEN LLP
540 Madison Avenue
New York, New York 10022
Telephone: (212) 607-8160
Facsimile: (212) 607-8161

*Attorneys for Defendant*

Defendant Sheldon Silver respectfully submits this opposition to the Government's October 12, 2015 motion *in limine*. The Government seeks to introduce salacious – and unproven – allegations that Mr. Silver had two extramarital affairs, urging that this "evidence" is "relevant not only to [Mr. Silver's] moral character, but to the use of his official position for private benefit." Gov't Br. 2. The Government does not seek to raise that inflammatory topic in its case-in-chief, but it threatens to use those allegations if Mr. Silver elicits testimony "relat[ing] to [his] ethics or integrity, separation of his personal business from his official position, and/or character for truthfulness and honesty." *Id.*

The Government's motion should be denied. This motion is a transparent attempt to smear Mr. Silver's personal character before the jury with irrelevant and tawdry gossip that has nothing to do with the charges in this case. The Government's allegations are irrelevant to Mr. Silver's character, and they are also inadmissible under Rule 403.

## ARGUMENT

### I. The Allegations Are Not Relevant to Mr. Silver's Character Traits at Issue

The Government claims that Mr. Silver's purported adultery, if brought out on cross-examination, would be probative of Mr. Silver's "integrity and ethics" and his "honesty and truthfulness." Gov't Br. 11. That is wrong. While the Government may cross-examine a witness about a relevant character trait when the defendant puts that trait at issue, "the incidents inquired about ***must be relevant to the character traits at issue in the trial.***" *United States v. Skelton*, 514 F.3d 433, 444 (5th Cir. 2008) (emphasis added); *see also United States v. Oshatz*, 704 F. Supp. 511, 514 (S.D.N.Y. 1989) (similar), *aff'd*, 912 F.2d 534 (2d Cir. 1990). The Government cannot make that showing here.

"Evidence of illicit sexual activities is ***totally immaterial*** to the credibility or character traits involved in most criminal cases." *United States v. Cox*, 536 F.2d 65, 71 (5th Cir. 1976)

(emphasis added). Case after case has thus excluded evidence of alleged extramarital affairs on the ground that such evidence has no bearing on credibility or character in a criminal trial – even in a fraud case like Mr. Silver's. *See United States v. Bistrup*, 449 F.3d 873, 882 (8th Cir. 2006) (mortgage fraud); *United States v. Davis*, 490 F.3d 541, 547 (6th Cir. 2007) (Medicare fraud); *United States v. Ndiaye*, 434 F.3d 1270, 1290 (11th Cir. 2006) (Social Security fraud); *United States v. Thiongo*, 344 F.3d 55, 60-61 (1st Cir. 2003) (immigration fraud); *Cox*, 536 F.2d at 71 (importation of marijuana); *Aaron v. United States*, 397 F.2d 584, 585 (5th Cir. 1968) (falsifying bank records); *United States v. Robicheaux*, No. 05 Cr. 2167, 2008 WL 4426015, at *5 (S.D. Cal. Sept. 24, 2008) (immigration fraud).

In *Bistrup*, for example, a husband and wife were both accused of mortgage fraud, and the wife sought to introduce evidence of her husband's affair to show that her husband had deceived her into signing false loan applications. 449 F.3d at 882. The district court excluded the evidence, and the Eighth Circuit affirmed. *Id.* "[E]vidence of the affair," the court held, "would not have made it less probable that the mortgage closer had explained the documents to her, that the documents contained false information, or that she signed the documents." *Id.* Rather, the evidence would only have "confused or misled the jury and unfairly prejudiced [the husband's] defense." *Id.*

Those same principles apply here. Mr. Silver is accused of committing fraud, extortion, and money laundering in earning outside income. Superseding Indictment ¶¶33-45. Mr. Silver's private personal life has nothing to do with any of those charges. Whether Mr. Silver engaged in extramarital affairs does not make it more or less likely, for instance, that he used his official position to obtain referrals from real-estate developers, *id.* ¶8(a); or used official acts to obtain mesothelioma referrals from Dr. Taub, *id.* ¶8(c); or told the truth on his financial

2

disclosure forms, *id.* ¶9; or obstructed the Moreland Commission's investigation, *id.* The Government's allegations are "totally immaterial to the credibility or character traits involved" in this case. *Cox*, 536 F.2d at 71.

The Government claims that Mr. Silver's alleged affair with one woman, ████████ ████████████ is relevant because he supposedly carried on that relationship ████████ ████████████ when she lobbied him on behalf of clients who had business before the State." Gov't Br. 11. Such an affair, the Government claims, "demonstrates Silver's willingness to use his official powers to further his personal interests while concealing his personal involvement from his staff and the public." *Id.* at 12. But Mr. Silver is not charged with concealing his personal affairs – he is charged with performing official acts ***in exchange for*** private gain. *See United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) (honest-services fraud requires a "scheme[] involving payments . . . ***in exchange for*** specific official acts" (emphasis added)); *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007) (extortion requires accepting things of value "***in exchange for*** a promise to perform official acts for the giver" (emphasis added)). The Government offers no proof whatsoever that Mr. Silver ever "use[d] his official powers" to help ████████████████████ in exchange for a purported sexual relationship, or even that he treated her lobbying proposals any differently from any other person's. The Government's evidence has no bearing whatsoever on whether Mr. Silver used the powers of his office in exchange for private gain.

The Government claims that Mr. Silver's purported second affair with ████████ ████████████ is relevant because he supposedly recommended her for a job with █ ████████████. Gov't Br. 12. According to the Government, Mr. Silver's alleged actions "reflect[] deliberate deception by Silver while seeking a benefit for ████████

3

███████████, and thus for himself, through use of his official position." *Id.* Once again, the Government's argument fails because it does not show that Mr. Silver sought a job for ███ ███████████████████ *in exchange for* a purported sexual relationship. *Cf. Rosen*, 716 F.3d at 700; *Ganim*, 510 F.3d at 147. The Government, moreover, points to nothing that would have required Mr. Silver to disclose a personal relationship with a candidate when recommending her for a job to ███████████████████. *See United States v. Rabbitt*, 583 F.2d 1014, 1026 (8th Cir. 1978) (no deprivation of honest services where the defendant introduced a friend to other public officials responsible for awarding city contracts, where the defendant was not involved in awarding those contracts, and where the government did not prove the legislator had an affirmative duty to disclose). These accusations thus prove nothing about Mr. Silver's character traits at issue in this case and should be excluded.

The cases the Government cites are inapposite. They all involved claims and testimony to which evidence of an extramarital affair was directly relevant. In *United States v. Garnes*, 587 F. App'x 60, 61-62 (4th Cir. 2014), for example, the prosecution cross-examined the witness about her affair to rebut her testimony about why she had been fired from a previous job. In *United States v. Duval*, No. 89-1891, 1990 WL 52371, at *3 (6th Cir. 1990), the defendant's spending on his mistress was relevant to whether the defendant, accused of drug trafficking, had come into unexplained wealth. In *Longmire v. Alabama State University*, 151 F.R.D. 414, 419 (M.D. Ala. 1992), the plaintiff's adultery was admissible to rebut his claim that he had been defamed by allegations of sexual harassment. In *United States v. Shyne*, 388 F. App'x 65, 71-72 (2d Cir. 2010), the court merely held that it was not an abuse of discretion to allow inquiries into an affair after the defendant elicited testimony from his *pastor* that he "carried himself in a very honorable manner" – not testimony about his character or credibility generally. And in *Forgione*

4

*v. Keane*, No. 90 Civ. 1221, 1990 WL 127688, at *3 (E.D.N.Y. Aug. 15, 1990), the court denied *habeas* relief to a petitioner who **admitted** an affair on the stand but complained about the prosecutor's characterizations of that affair in his summation.

Unlike those cases, Mr. Silver's purported affairs have no bearing on any of the charges against him or any specific character trait that could conceivably be relevant in this case. Evidence of those purported affairs is thus not admissible.

## II. The Evidence Should Be Excluded Under Rule 403

The Government's allegations should also be excluded under Rule 403. Even when a defendant "open[s] the door to character or reputation evidence," cross-examination is still "subject to a Rule 403 balancing inquiry." *Stone v. C.R. Bard, Inc.*, No. 02 Civ. 3433, 2003 WL 22902564, at *4 (S.D.N.Y. Dec. 8, 2003); *United States v. Bush*, 58 F.3d 482, 489 n.8 (9th Cir. 1995) ("Evidence admissible under Rules 404 and 405 must still pass muster under Rule 403.") Any scant probative value the evidence of Mr. Silver's purported affairs may have is overwhelmed by the obvious risk of unfair prejudice and jury distraction.

Rule 403 bars evidence that "lur[es] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). That is a serious risk here: The Government's salacious accusations will tempt the jury to convict Mr. Silver based not on the actual evidence presented, but on their moral disapproval of his alleged adultery. Preventing such risks is a key purpose of Rule 403.

Courts have thus repeatedly recognized that evidence of extramarital affairs poses a risk of unfair prejudice that warrants exclusion under Rule 403. *See Davis*, 490 F.3d at 547 (finding that "any questions about an alleged extramarital affair would have been highly prejudicial"); *Bistrup*, 449 F.3d at 882 (affair evidence "unfairly prejudiced" the defense); *Robicheaux*, 2008

5

WL 4426015, at *5 (evidence of an affair "was, to the limited extent it may have been relevant, indeed, unduly prejudicial"). The same is true here.

Evidence of Mr. Silver's supposed adultery is also inadmissible under Rule 403 because it would distract the jury and waste time with collateral issues. *See Robicheaux*, 2008 WL 4426015, at *5 (evidence of affair improperly "changed the character and focus of the trial, creating distractions from the issue of guilt and a mini-trial on character"). Evidence should be excluded under Rule 403 when it threatens to "bog[] down the court in a 'mini-trial.'" *United States v. James*, 609 F.2d 36, 46 n.11 (2d Cir. 1979); *see also United States v. Ulbricht*, 79 F. Supp. 3d 466, 492-493 (S.D.N.Y. 2015). That risk looms especially large here. Allowing the Government to inject these tangential issues into the case would provoke both sides to litigate extraneous disputes about whether the affairs in fact occurred, whether Mr. Silver took any actions to benefit the two women, and whether any of those actions were improper as the Government contends. Those collateral issues would waste time and resources for the jury, the parties, and the Court. The evidence should therefore be excluded under Rule 403.

### III. Mr. Silver Will Not Open the Door to Questioning on This Topic

The Government claims that Mr. Silver could open the door to accusations of adultery any number of ways, including by introducing evidence of his "integrity and ethics," his "honesty and truthfulness," his "reputation as a family man," the "longevity of his marriage or his commitment to his marriage," or his "purported good acts on behalf of his constituents and the People of the State of New York." Gov't Br. 11 & n.4. That is incorrect.

The plain language of Rule 405(a) allows inquiry into "specific instances of [Mr. Silver's] conduct" only on "*cross-examination of the character witness.*" Fed. R. Evid. 405(a) (emphasis added). As a result, only "*direct examination* about the defendant's character 'opens the door' to cross-examination about specific acts of the defendant." *United States v. Nektalov*,

6

No. 03 Cr. 828, 2004 WL 1637010, at *2 (S.D.N.Y. July 21, 2004) (emphasis added); *see also Halo v. United States*, No. 06 Civ. 5041, 2007 WL 1299158, at *15 (E.D.N.Y. Apr. 30, 2007); *Stone*, 2003 WL 22902564, at *4 n.9. Likewise, Mr. Silver would only trigger the Government's right to cross-examine him about character evidence under Rule 608(b) if he *testifies*. Fed. R. Evid. 608(b) (cross-examination into character for truthfulness is allowed only for the "witness"). Notably, in all but one of the Government's cited cases, cross-examination about adultery was allowed only after the defendant or a character witness testified **on direct**. *See Shyne*, 388 F. App'x at 71-72; *Forgione*, 1990 WL 127688, at *3; *Garnes*, 587 F. App'x at 61-62; *Longmire*, 151 F.R.D. at 419.

In addition, Mr. Silver could only open the door to these issues by offering evidence of the specific character trait the Government seeks to dispute. "Once the defendant gives evidence of pertinent character traits . . . his claim of possession of these traits – but *only* these traits – is open to rebuttal." 1 McCormick on Evidence § 191 (7th ed. 2013) (emphasis added); *see, e.g., United States v. Wooden*, 420 F.2d 251, 253 (D.C. Cir. 1969) (testimony relating to the "reputation of the defendant for honesty and integrity and for peace and good order" would not open the door to cross-examination about defendant's convictions for drunkenness). There is an obvious difference, for example, between testimony specifically addressing the defendant's "reputation as a family man" or "the longevity of his marriage or his commitment to his marriage," on the one hand, and more generalized testimony about his "integrity and ethics," "honesty and truthfulness," or "purported good acts on behalf of his constituents and the People of the State of New York," on the other. Gov't Br. 11 & n.4.

The Government has offered no example of an issue genuinely relevant to this case that, if raised by the defense, would allow the prosecution to use this evidence. Mr. Silver's personal

7

relationship with his wife is not a relevant issue in this case, and the defense is certainly willing to stipulate that it will not question any witness on that topic. That should end the inquiry.

Mr. Silver's right to aggressively confront the witnesses against him and present a meaningful defense should not be hamstrung by the Government's implicit threat to disclose to the jury and the media tawdry and unproven allegations about his personal life if he does so. Even if the Court is inclined to allow questioning on this topic in some circumstances, therefore, it should sharply limit the evidence that would open the door.

## CONCLUSION

The Government's motion should be denied.

Dated:  October 15, 2015  
        New York, New York

Respectfully submitted,

/s/ Joel Cohen  
Joel Cohen  
STROOCK & STROOCK & LAVAN LLP  
180 Maiden Lane  
New York, New York 10038  
Telephone: (212) 806-5644  
Facsimile: (212) 806-6006  

/s/ Steven F. Molo  
Steven F. Molo  
Robert K. Kry  
Justin V. Shur  
MOLO LAMKEN LLP  
540 Madison Avenue  
New York, New York 10022  
Telephone: (212) 607-8160  
Facsimile: (212) 607-8161  

*Attorneys for Defendant*